## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| HENKEL CORPORATION, | Civ. A. No.: |
| Plaintiff, | **JURY TRIAL DEMANDED** |
| v. | |
| BEAUTYANDWOMAN LLC, | |
| Defendant. | September 12, 2024 |

## <u>COMPLAINT</u>

Plaintiff Henkel Corporation ("Henkel"), for its Complaint against Defendant BeautyandWoman, LLC ("BeautyandWoman"), hereby alleges as follows:

### THE PARTIES

1.     Henkel is a Delaware corporation with its principal place of business at One Henkel Way, Rocky Hill, Connecticut 06067.  Henkel manufactures and sells, among other things, personal care products, including hair styling, hair cleaning, and hair coloring products under the JOICO® and COLOR INTENSITY® marks.   Henkel also provides educational services in connection with hair products under the JOICO® brand.

2.     Upon information and belief, Defendant BeautyandWoman is a Florida limited liability company with a principal place of business at 132 Chelsea Street, Apt. 46, Everett, Massachusetts 02149.

3.     Upon information and belief, Defendant BeautyandWoman is a manufacturer and/or seller of hair care products and sells such products under, without limitation, the brand names "Royco," "Royco Professional," "Intensy Color," and "BeautyandWoman."

### JURISDICTION AND VENUE

4. This action is brought on the various grounds and pursuant to the various statutes cited herein, including, but not limited to: the Lanham Act (15 U.S.C. § 1051 *et seq.*); Massachusetts Unfair or Deceptive Act, Section 11 of Chapter 93A; as well as common and/or case law prohibitions against trademark infringement, trademark dilution, and unfair competition.

5. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338.

6. This Court also has jurisdiction over this action under 28 U.S.C. § 1332(a)(1) because this action is between citizens of different states and, on information and belief, the amount in controversy exceeds the sum or value of $75,000.

7. This Court has supplemental jurisdiction over Henkel's claims arising under state law under 28 U.S.C. § 1367(a) because these claims are so related to their claims under federal law that they form part of the same case or controversy and derive from a common nucleus of operative facts.

8. This Court has personal jurisdiction over Defendant BeautyandWoman because BeautyandWoman has purposely availed itself of the privilege of conducting activities, including doing business, within the Commonwealth of Massachusetts.   Upon information and belief BeautyandWoman's principal place of business is in this District, having listed Everett, Massachusetts as its address for its trademark application filed with the United States Patent and Trademark Office ("USPTO") (U.S. Application Serial No. 97561524), as well as for its related filings with the USPTO Trademark Trial and Appeal Board ("TTAB").   Exs. A, B. BeautyandWoman further holds itself out on social media as being located in the Boston area. Ex. C.   Upon information and belief, BeautyandWoman is shipping, distributing, selling, importing, offering for sale, and/or promoting the products at issue in this Complaint (among other

products) in this District, and continuously and systematically conducts, transacts, and solicits business in this District.

9.      Venue is proper in this District under 28 U.S.C. § 1391(b-c) because Massachusetts is BeautyandWoman's place of business and thus is subject to this Court's personal jurisdiction.

## INTRADISTRICT ASSIGNMENT

10.      Pursuant to this Court's Civil Local Rules 40.1(c)(1) and 40.1(d)(1)(C), this action may be properly assigned to the Eastern Division because BeautyandWoman resides in Everett, Massachusetts, which is a city in Middlesex County belonging to the Eastern Division of the District of Massachusetts.

## FACTS

### Henkel and Its Trademark Rights

11.      Henkel develops, manufactures, markets, and sells innovative and professional-quality hair products using the JOICO® and COLOR INTENSITY® marks, including hairspray, hair gel, shampoo, masque, detangler, cream, coloring agents, among other related goods. COLOR INTENSITY® specifically marks Henkel's hair products that contain intensely concentrated pigments designed to create vibrant colored hair with about thirty-five different color shades to choose form. Henkel also offers educational services in connection with those products. Ex. D. In addition, Henkel owns and operates the website joico.com and has various social media accounts, including on Instagram, Facebook, YouTube, X (formerly Twitter), and TikTok, all of which use JOICO® and/or COLOR INTENSITY® to identify Henkel and/or its products. *See e.g.*, Ex. E.

12.      Henkel and its predecessors have used JOICO in commerce since at least 1976. Zotos International, Inc. was engaged in the development, manufacture, sale, and marketing of

hair care products under the JOICO mark in commerce.  It owned all rights, title, and interest in JOICO before it was purchased and became part of Henkel in or around December 2017.  In or around January 2021, Zotos International Inc. was fully merged into Henkel and in connection with that merger, all rights, title, and interest in JOICO were validly assigned and transferred to Henkel.

13.     Henkel's related incontestable trademark registrations – U.S. Registration Nos. 3,997,303, and 2,186,915 – cover the standard character mark "JOICO" for hair products and educational services in the field of hair care, among other goods and services.  Ex. F.  Henkel's domain name "joico.com" was registered in 1996 and has continued to be active today.

14.     Henkel and its predecessors have used COLOR INTENSITY in commerce since at least 2007.  Henkel's related incontestable trademark registration – U.S. Registration No. 4,984,308 – covers the standard character mark "COLOR INTENSITY" for hair coloring preparations and related goods.  Ex. G.

15.     Hereinafter, Henkel's common law trademark and trademark registrations for JOICO® and COLOR INTENSITY® shall, where appropriate, be collectively referred to as "Henkel's Trademark Rights."

16.     Henkel's innovative hair products using the JOICO® and COLOR INTENSITY® marks have gained worldwide recognition with both consumers and hair care professionals via Henkel's print, online, and in-store advertising in markets throughout the United States and around the world.  In that regard, Henkel's annual sales of products using the JOICO® and COLOR INTENSITY® marks have totaled approximately: (a) $135 million to $140 million in the United States; (b) $10 million in Latin America and Asia, with approximately $1.5 million in annual sales in Brazil alone; and (c) $25 million in Europe.

17.     Given the worldwide success and ubiquity of the JOICO® brand, Henkel has protected its rights to the JOICO® brand internationally by obtaining over one hundred (100) trademark registrations covering the JOICO® mark and variations thereof in over seventy (70) countries worldwide.  A list of those foreign trademark registrations, along with various other related pending international trademark applications, is attached hereto as Ex. K.

18.     Henkel's products bearing JOICO® and COLOR INTENSITY® have received rave reviews in various trade publications and beauty and fashion magazines.  They have also won various editorial and industry awards, including without limitation: Cosmopolitan's 2024 Holy Grail Beauty Award; Good Housekeeping - Best Leave-in Conditioner 2024; the Australian Hair Industry Awards Style Hair Product of the Year 2023; Self.com - Best Shampoos and Conditioners 2020; Hollywood Life Beauty Awards 2019 - Best New Hair Products and Tools; and various 2017 Stylist Choice Awards.

19.     Furthermore, JOICO® products are used by celebrity stylists and their celebrity clients.  For example, JOICO® celebrity hairstylist, Jared "JStayReady" Henderson, used multiple JOICO® products to create different styles for Doja Cat, winner of the Best Pop Duo/Group Performance at the 64th Annual Grammy Awards.  Henkel and the JOICO® brand also had a long-time relationship with celebrity stylist Frederic Aspiras, who not only has been Lady Gaga's personal hairstylist, but also worked on the film House of Gucci, for which he was nominated for an Oscar in the category of makeup and hairstyling.  In preparing Lady Gaga for the soundtrack video for the film Top Gun Maverick, her Las Vegas performances, and multiple red-carpet appearances at award shows including the Golden Globes, Grammy Awards, the Oscars, and others, Federic Aspiras used many JOICO® products to create Lady Gaga's different styles for those events.

20.     Through the longstanding and extensive advertising campaigns, targeted efforts to grow sales and build brand name recognition of JOICO® and COLOR INTENSITY®, Henkel's Trademark Rights have acquired distinctiveness and significant goodwill and have become well-known in United States and abroad, as evidenced by, among other things, Henkel's significant United States and world-wide annual sales figures, discussed herein.

21.     Henkel's Trademark Rights are thus famous pursuant to 15 U.S.C. § 1125(c)(2).

**BeautyandWoman**

22.     Upon information and belief, BeautyandWoman is a privately owned limited liability company formed in or about February 2021 that is also engaged in the hair product business, and thus directly competes with Henkel.   On information and belief, Henkel and BeautyandWoman share similar demographic targets, customer bases, and trade and marketing channels.  Liliane Pereira Menezes L Oliveira and Carlos Alex da Silva appear as sole authorized members of BeautyandWoman.  Both are also the sole authorized members of a Florida company named Royco Professional LLC that was formed in or about October 2022.

23.     Upon information and belief, BeautyandWoman had not used "Royco" until August 2022 or thereafter.  *See* Ex. J.  It also has no federal trademark registrations in the United States directed to "Royco" or "Intensy Color."

24.     BeautyandWoman (and/or its owners via another entity) owns and operates at least two websites: www.BeautyandWoman.com (whose domain name was registered in or about 2021) and www.RoycoProfessional.com (whose domain name was registered in or about 2022), as well as a Facebook business page and an Instagram account, all of which prominently display the word "Royco" and/or the phrase "Intensy Color" to identify itself and its products.  Ex. H.  Products bearing the phrase "Intensy Color" are further branded with the name "Lé Charme's."  Upon

information and belief, "Lé Charme's" is a Brazilian brand whose products are sold in United States by BeautyandWoman.

25.     In addition to those websites and social media accounts, BeautyandWoman also advertises, promotes, displays, and/or sells its hair products bearing the marks "Royco" and/or "Intensy Color" on other e-commerce platforms (such as Amazon and Walmart).  Ex. I.  Royco Professional's Instagram account further lists Boston as the relevant location.  Ex. C.

26.     On August 23, 2022, BeautyandWoman filed an application for federal registration of ROYCO PROFESSIONAL, disclaiming the word "professional" (U.S. Application Serial No. 97561524, hereafter "the '524 Application"), for use in connection with "Hairspray; Shampoos; Bath soaps in liquid, solid or gel form; Cosmetic creams; Cosmetic hair dressing preparations; Cosmetic preparations for hair care; Cosmetic preparations for the hair and scalp; Hair care creams; Hair care lotions; Hair care preparations; Hair cleaning preparations; Hair conditioner; Hair dyes; Hair moisturizers; Hair relaxers; Hair rinses; Hair straightening preparations; Hair tonic; Waving preparations for the hair."  Ex. A.  As owners of BeautyandWoman, Liliane Pereira Menezes L Oliveira and Carlos Alex da Silva signed the '524 Application, and listed Everett, Massachusetts as the address for BeautyandWoman.  Ex. J.

27.     After the '524 Application was published, Henkel opposed the registration of ROYCO PROFESSIONAL and the TTAB instituted an Opposition Proceeding thereafter. BeautyandWoman's filings in connection with the TTAB Opposition Proceeding, again, listed Everett, Massachusetts as its address.  Ex. B.  That Opposition Proceeding is currently pending.

**Liliane Pereira Menezes L Oliveira, an owner of BeautyandWoman**

28.     Upon information and belief, Liliane Pereira Menezes L Oliveira – one of the two owners of BeautyandWoman who signed the '524 Application – also goes by Lili Loureiro, a

witness with relevant information disclosed by BeautyandWoman in the TTAB Opposition Proceeding. The witness address for Lili Loureiro, as well as the address listed for Liliane Pereira Menezes L Oliveira as an authorized member of Royco Professional LLC, is exactly the same as the address for BeautyandWoman, located in Everett, Massachusetts.

29. Upon information and belief, Liliane Pereira Menezes L Oliveira tags "@roycoprofessional" and "@beautyandwoman" in the profile of an Instagram account (www.instagram.com/lili17.usa/) with the name of Lili Menezes Loureiro and uses that Instagram account to publish photos and posts relating to products bearing "Royco" and/or "Intensy Color." Like products found on www.BeautyandWoman.com and www.RoycoProfessional.com, those bearing the "Intensy Color" mark also has "Lé Charme's" as the brand name.

**Carlos Alex da Silva, an owner of BeautyandWoman**

30. Upon information and belief, Carlos Alex da Silva – the other owner of BeautyandWoman who signed the '524 Application – is the sole owner of a business named Beleza Todo Momento, in Brazil, that manufactures, distributes, advertises, promotes, and/or sells hair care products among other goods. That business's Facebook page advertises hair products, many bearing the mark "Intensy Color" and "Lé Charme's" as the brand name, like the products offered for sale, sold, distributed, displayed, and/or advertised by BeautyandWoman.

31. Upon information and belief, Carlos Alex da Silva owns the domain name – www.roycoprofessional.com.br – and three pending Brazilian character and design trademark applications directed to ROYCO PROFESSIONAL. Upon information and belief, Carlos Alex da Silva plans to launch products bearing the "Royco" mark in Brazil in the near future.

**BeautyandWoman's Confusingly Similar Marks**

32. BeautyandWoman use of "Royco" and "Intensy Color" is confusingly similar to

Henkel's use of JOICO® and COLOR INTENSITY®, respectively.  BeautyandWoman's goods are also hair products, in the field of goods identical to Henkel's products bearing the JOICO® and/or COLOR INTENSITY® marks.

33.     Select examples of BeautyandWoman's marketing content and products are shown next to Henkel's in the following chart:



| BeautyandWoman | Henkel |
|:---:|:---:|
| **Royco Dark Mud Brazilian Keratin Treatment** | **JOICO® Rise Up Powder Spray** |

| BeautyandWoman | Henkel |
|---|---|
| **Le Charmes Intensy Color Toner Snow White** | **COLOR INTENSITY® Love Aura True Lav** |



34.     BeautyandWoman's use of "Royco" and "Intensy Color" is likely to cause confusion – and upon information and belief has already caused actual confusion – in the minds of consumers regarding the source of BeautyandWoman's products and/or regarding the sponsorship, affiliation, or connection of BeautyandWoman's products.  Specifically, consumers viewing a BeautyandWoman's product would likely assume that it is associated with Henkel, the JOICO®, and/or COLOR INTENSITY® brands.   Among other things, the Henkel and BeautyandWoman marks are similar in terms of sight, sound, and overall commercial impression.

35.     As explained further below, by employing confusingly similar marks in the same market (*i.e.*, hair products), BeautyandWoman has taken advantage of the recognition of Henkel's JOICO® and/or COLOR INTENSITY® marks, and Henkel's associated reputation and goodwill. In so doing, BeautyandWoman has unfairly competed with Henkel in the marketplace by, among other things, causing consumer confusion as to the source of BeautyandWoman's products, by diverting sales from Henkel, by diluting Henkel's Trademark Rights, and by otherwise profiting

from its infringement of Henkel's intellectual property.

36.     Upon information and belief, the BeautyandWoman products at issue are inferior to and/or different in type from Henkel's products and thus have tarnished and/or are likely to tarnish the JOICO®, and/or COLOR INTENSITY® brands.

37.     BeautyandWoman's conduct in using confusingly similar marks has been systematic and deliberate, duplicating as closely as possible the Henkel Trademark Rights in a willful, intentional, and calculated attempt to trade upon the popularity, recognizability, quality, and goodwill associated with the Henkel Trademark Rights and associated products.

## COUNT I

### Trademark Infringement (15 U.S.C. § 1114(1))

1-37. Henkel hereby repeats and realleges paragraphs 1 through 37 of the Complaint as if fully set forth herein.

38.     Henkel owns and uses JOICO® and/or COLOR INTENSITY® in connection with its hair products and related services as alleged above.

39.     Henkel has not authorized BeautyandWoman or any other third party to use JOICO® and/or COLOR INTENSITY®.

40.     BeautyandWoman has used and continues to use the marks "Royco" and/or "Intensy Color" in connection with its promotion, advertising, distribution, sale, offering for sale, and/or other use in commerce of hair products, a usage that is nearly identical and/or confusingly similar to Henkel's use of JOICO® and/or COLOR INTENSITY®, respectively.

41.     BeautyandWoman's unauthorized use was intended to cause, is causing, and is likely to continue to cause confusion, or mistake, or to deceive as to the affiliation, connection, or association of BeautyandWoman with Henkel.

42.     BeautyandWoman's wrongful acts constitute a violation under 15 U.S.C. § 1114(1).

43.     As a direct and proximate result of BeautyandWoman's unlawful activities, Henkel has suffered and will continue to suffer damages in an amount presently unknown and to be ascertained at trial.

44.     BeautyandWoman's conduct has caused and will continue to cause immediate and irreparable injury to Henkel, including its business, reputation, and goodwill, and will continue to damage Henkel and deceive the public unless enjoined by this Court.  Henkel has no adequate remedy at law and the injury is, in part, intangible in nature and not capable of being fully measured or valued entirely in terms of monetary damages.

## COUNT II

### Contributory Trademark Infringement (15 U.S.C. § 1114(1))

1-44.    Henkel hereby repeats and realleges paragraphs 1 through 44 of the Complaint as if fully set forth herein.

45.     BeautyandWoman has induced or contributed to a third party's use of the word "Royco" and/or the phrase "Intensy Color" in connection with its promotion, advertising, distribution, sale, offering for sale, and/or other use in commerce of hair products, a usage that is nearly identical and/or confusingly similar to Henkel's use of JOICO® and/or COLOR INTENSITY®, respectively.

46.     BeautyandWoman has allowed products that infringe Henkel's Trademark Rights to be offered or sale, sold, and/or in channels of distribution it owns and/or operates, despite knowledge that such conduct was likely to cause, is causing, and is likely to continue to cause confusion, or mistake, or to deceive as to the affiliation, connection, or association of

BeautyandWoman with Henkel.

47.     BeautyandWoman's   wrongful   acts   constitute   a   violation   under 15 U.S.C. § 1114(1).

48.     As a direct and proximate result of BeautyandWoman's unlawful activities, Henkel has suffered and will continue to suffer damages in an amount presently unknown and to be ascertained at trial.

49.     BeautyandWoman's conduct has caused and will continue to cause immediate and irreparable injury to Henkel, including its business, reputation, and goodwill, and will continue to damage Henkel and deceive the public unless enjoined by this Court.   Henkel has no adequate remedy at law and the injury is, in part, intangible in nature and not capable of being fully measured or valued entirely in terms of monetary damages.

## COUNT III

### Unfair Competition and False Designation of Origin / False Description

### (15 U.S.C. § 1125(a))

1-49.    Henkel hereby repeats and realleges  paragraphs 1 through 49 of the Complaint as if fully set forth herein.

50.     BeautyandWoman has used and continues to use the word "Royco" and/or the phrase "Intensy Color" in connection with its promotion, advertising, distribution, sale, offering for sale, and/or other use in commerce of hair products, a usage that is nearly identical and/or confusingly similar to Henkel's use of JOICO® and/or COLOR INTENSITY®, respectively.

51.     BeautyandWoman's unauthorized use suggests that its goods originated with, were manufactured by, and/or are sponsored by Henkel, which constitutes a false designation of origin and false description and representation of BeautyandWoman's products.

52.     BeautyandWoman's acts are likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of BeautyandWoman with Henkel, or as to the origin, sponsorship, or approval of the BeautyandWoman's goods, services, or commercial activities by Henkel.

53.     BeautyandWoman's wrongful acts constitute false designation of origin and/or false description or representation, in violation of 15 U.S.C. §§ 1125(a)(1)(A) and/or 1125 (a)(1)(B).  Upon information and belief, BeautyandWoman's conduct has been willful, wanton, reckless, with full knowledge, and in total disregard of Henkel's Trademark Rights.

54.     As a direct and proximate result of BeautyandWoman's unlawful activities, Henkel has suffered and will continue to suffer damages in an amount presently unknown and to be ascertained at trial.

55.     BeautyandWoman's conduct has caused and will continue to cause immediate and irreparable injury to Henkel, including its business, reputation, and goodwill, and will continue to damage Henkel and deceive the public unless enjoined by this Court.  Henkel has no adequate remedy at law and the injury is, in part, intangible in nature and not capable of being fully measured or valued entirely in terms of monetary damages.


**COUNT IV**

**Contributory Unfair Competition and False Designation of Origin / False Description**

**(15 U.S.C. § 1125(a))**

1-55.   Henkel hereby repeats and realleges paragraphs 1 through 55 of the Complaint as if fully set forth herein.

56.     BeautyandWoman has induced or contributed to third party's use of the word "Royco" and/or the phrase "Intensy Color" in connection with its promotion, advertising,

distribution, sale, offering for sale, and/or other use in commerce of hair products, a usage that is nearly identical and/or confusingly similar to Henkel's use of JOICO® and/or COLOR INTENSITY®, respectively.

57.     BeautyandWoman has allowed products that infringe Henkel's Trademark Rights to be offered for sale, sold, and/or in channels of distribution it owns and/or operates, despite knowledge that such conduct was likely to suggest, is suggesting, and is likely to continue to suggest that those goods originated with, were manufactured by, and/or are sponsored by Henkel, which constitutes a false designation of origin and false description and representation of BeautyandWoman's products.

58.     BeautyandWoman's acts are likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of BeautyandWoman with Henkel, or as to the origin, sponsorship, or approval of the BeautyandWoman's goods, services, or commercial activities by Henkel.

59.     BeautyandWoman's wrongful acts constitute contributory false designation of origin and/or false description or representation, in violation of 15 U.S.C. §§ 1125(a)(1)(A) and/or 1125 (a)(1)(B).  On information and belief, BeautyandWoman's conduct has been willful, wanton, reckless, with full knowledge, and in total disregard of Henkel's Trademark Rights.

60.     As a direct and proximate result of BeautyandWoman's unlawful activities, Henkel has suffered and will continue to suffer damages in an amount presently unknown and to be ascertained at trial.

61.     BeautyandWoman's conduct has caused and will continue to cause immediate and irreparable injury to Henkel, including its business, reputation, and goodwill, and will continue to damage Henkel and deceive the public unless enjoined by this Court.  Henkel has no adequate

remedy at law and the injury is, in part, intangible in nature and not capable of being fully measured or valued entirely in terms of monetary damages.

**COUNT V**

**Trademark Infringement (G.L. c. 110H, §§ 12-13)**

1-61.    Henkel repeats and realleges paragraphs 1 through 61 of the Complaint as if fully set forth herein.

62.    Henkel owns common law rights in JOICO® and COLOR INTENSITY®, as alleged above, which are superior to any rights that BeautyandWoman may claim in identical or confusingly similar marks.

63.    BeautyandWoman has used, continues to use, and upon information and belief, plans to continue to use the word "Royco" and/or the phrase "Intensy Color" in connection with its promotion, advertising, distribution, sale, offering for sale, and/or other use in commerce of hair products, a usage that is nearly identical and/or confusingly similar to Henkel's use of JOICO® and/or COLOR INTENSITY®, respectively.

64.    Alternatively, despite having full knowledge of Henkel's Trademark Rights, BeautyandWoman intentionally contributes and/or induces a third party to commit infringement of Henkel's Trademark Rights by providing sales platforms, channels of distribution, promotion, and/or marketing for goods manufactured by third party vendors that infringe upon Henkel's Trademark Rights.

65.    BeautyandWoman's unauthorized use, or its actions inducing and/or contributing to other's use of nearly identical and/or confusingly similar marks, causes and will continue to cause confusion or mistake, or to deceive as to the affiliation, connection, or association of BeautyandWoman with Henkel, or as to the origin, sponsorship, or approval of the

-16-

BeautyandWoman's goods, services, or commercial activities by Henkel.

66.     BeautyandWoman further submitted the' 524 Application in an attempt to procure a federal registration for the mark "ROYCO PROFESSIONAL," disclaiming the word "professional."

67.     BeautyandWoman's wrongful acts violate Massachusetts General Laws, Chapter 110H, §§ 12-13.  On information and belief, BeautyandWoman's conduct has been willful, wanton, reckless, with full knowledge, and in total disregard of Henkel's Trademark Rights.

68.     BeautyandWoman's intentional, knowing, and willful acts of direct and/or contributory trademark infringement have caused and continue to cause loss of goodwill and profits to Henkel, damage to Henkel's reputation, unlawful diversion of sales and unjust enrichment of BeautyandWoman at the expense of Henkel, and injury to consumers due to confusion, mistake, and deception in the marketplace.

69.     As a direct and proximate result of BeautyandWoman's unlawful activities, Henkel has suffered and will continue to suffer damages in an amount presently unknown and to be ascertained at trial.

70.     BeautyandWoman's conduct has caused and will continue to cause immediate and irreparable injury to Henkel, including its business, reputation, and goodwill, and will continue to damage Henkel and deceive the public unless enjoined by this Court.  Henkel has no adequate remedy at law and the injury is, in part, intangible in nature and not capable of being fully measured or valued entirely in terms of monetary damages.

.

## COUNT VI

### Common Law Trademark Infringement

1-70.    Henkel repeats and realleges paragraphs 1 through 70 of the Complaint as if fully set forth herein.

71.    Henkel owns common law rights in JOICO® and COLOR INTENSITY®, as alleged above, which are superior to any rights that BeautyandWoman may claim in identical or confusingly similar marks.

72.    BeautyandWoman has used, continues to use, and upon information and belief, plans to continue to use the word "Royco" and/or the phrase "Intensy Color" in connection with its promotion, advertising, distribution, sale, offering for sale, and/or other use in commerce of hair products, a usage that is nearly identical and/or confusingly similar to Henkel's use of JOICO® and/or COLOR INTENSITY®, respectively.

73.    Alternatively, despite having full knowledge of Henkel's Trademark Rights, BeautyandWoman intentionally contributes and/or induces a third party to commit infringement of Henkel's Trademark Rights by providing sales platforms, channels of distribution, promotion, and/or marketing for goods manufactured by third party vendors that infringe upon Henkel's Trademark Rights.

74.    BeautyandWoman's unauthorized use, or its actions inducing and/or contributing to other's use of nearly identical and/or confusingly similar marks, causes and will continue to cause confusion or mistake, or to deceive as to the affiliation, connection, or association of BeautyandWoman with Henkel, or as to the origin, sponsorship, or approval of the BeautyandWoman's goods, services, or commercial activities by Henkel.

75.    BeautyandWoman further submitted the '524 Application in an attempt to procure a federal registration for the mark "ROYCO PROFESSIONAL," disclaiming the word

"professional."

76.     BeautyandWoman's wrongful acts violate common law concerning trademark rights.  On information and belief, BeautyandWoman's conduct has been willful, wanton, reckless, with full knowledge, and in total disregard of Henkel's Trademark Rights.

77.     BeautyandWoman's intentional, knowing, and willful acts of direct and/or contributory trademark infringement have caused and continue to cause loss of goodwill and profits to Henkel, damage to Henkel's reputation, unlawful diversion of sales and unjust enrichment of BeautyandWoman at the expense of Henkel, and injury to consumers due to confusion, mistake, and deception in the marketplace.

78.     As a direct and proximate result of BeautyandWoman's unlawful activities, Henkel has suffered and will continue to suffer damages in an amount presently unknown and to be ascertained at trial.

79.     BeautyandWoman's conduct has caused and will continue to cause immediate and irreparable injury to Henkel, including its business, reputation, and goodwill, and will continue to damage Henkel and deceive the public unless enjoined by this Court.  Henkel  has no adequate remedy at law and the injury is, in part, intangible in nature and not capable of being fully measured or valued entirely in terms of monetary damages.


## COUNT VII

### Trademark Dilution  (15 U.S.C. § 1125(c))

1-79.   Henkel repeats and realleges paragraphs 1 through 79 of the Complaint as if fully set forth herein.

80.     Henkel and its predecessors have used the JOICO® and COLOR INTENSITY® to identify its hair products and services ever since 1976 and 2007, respectively.

81.     Henkel has extensively advertised its goods and services under Henkel's Trademark Rights, investing considerable time, money, and effort in building up the associated goodwill.

82.     After years of extensive advertising, efforts to build a name, and growing sales, Henkel has developed substantial name recognition and goodwill in Henkel's Trademark Rights in the United States and abroad, as discussed herein.

83.     Various celebrities and celebrity stylists have used, advertised, and/or featured products bearing Henkel's Trademark Rights over the years.

84.     Henkel's Trademark Rights are thus famous pursuant to 15 U.S.C. § 1125(c)(2).

85.     In about August 2022 or later, BeautyandWoman has used and continues using, without authorization, marks confusingly similar to Henkel's Trademarks Rights in a manner that creates a likelihood of dilution of their distinctive quality, including from actual and potential confusion, diminution in their uniqueness, and BeautyandWoman's use in a manner that appropriates or tarnishes Henkel's goodwill and reputation.

86.     Henkel is entitled to preliminary and permanent injunctive relief, enjoining BeautyandWoman from any further use of marks confusingly similar to Henkel's Trademark Rights.

87.     Because BeautyandWomen acted willfully and intentionally to trade on Henkel's reputation and or cause dilution of Henkel's famous Trademark Rights, Henkel is entitled to BeautyandWomen's profits, damages, exemplary damages, fees and costs pursuant to 15 U.S.C. § 1117(a).

## COUNT VIII

### Trademark Dilution (G.L. c. 110H, § 13)

1-87.    Henkel repeats and realleges paragraphs 1 through 87 of the Complaint as if fully set forth herein.

88.    Henkel and its predecessors have used the JOICO® and COLOR INTENSITY® to identify its hair products and services ever since 1976 and 2007, respectively.

89.    Henkel has extensively advertised its goods and services under Henkel's Trademark Rights, investing considerable time, money, and effort in building up the associated goodwill.

90.    After years of extensive advertising, efforts to build a name, and growing sales, Henkel has developed substantial name recognition and goodwill in Henkel's Trademark Rights in the United States and abroad.

91.    In addition to being registered with the USPTO, JOICO® and COLOR INTENSITY® have distinctive quality as a trademark at common law.

92.    In about August 2022 or later, BeautyandWoman has used and continues using, without authorization, marks confusingly similar to Henkel's Trademarks Rights in a manner that creates a likelihood of dilution of their distinctive quality, including from actual and potential confusion, diminution in their uniqueness, and BeautyandWoman's use in a manner that appropriates or tarnishes Henkel's goodwill and reputation.

93.    Henkel is entitled to preliminary and permanent injunctive relief under M.G.L. c. 110H, § 13, enjoining BeautyandWoman from any further use of marks confusingly similar to Henkel's Trademark Rights.

94.    Because BeautyandWomen acted willfully and intentionally to trade on Henkel's reputation and or cause dilution of Henkel's famous Trademark Rights, Henkel is entitled to

-21-

BeautyandWomen's profits, damages, exemplary damages, fees and costs pursuant to M.G.L. c. 110H, §§ 13, 16, and/or other applicable state statute and common law.


## COUNT IX

### Unfair Trade Practices (G.L. c. 93A, §§ 2 and 11)

1-94.    Henkel repeats and realleges paragraphs 1 through 94 of the Complaint as if fully set forth herein.

95.    The parties are engaged in trade or commerce within the definition of Massachusetts General Laws, Chapter 93A, including but not limited to offering for sale, sale, and/or distribution of property.

96.    BeautyandWoman has used, continues to use, and upon information and belief, plans to continue to use the word "Royco" and/or the phrase "Intensy Color" in connection with its promotion, advertising, distribution, sale, offering for sale, and/or other use in commerce of hair products, a usage that is nearly identical and/or confusingly similar to Henkel's use of JOICO® and/or COLOR INTENSITY®, respectively.

97.    Alternatively, despite having full knowledge of Henkel's Trademark Rights, BeautyandWoman intentionally contributes and/or induces a third party to commit infringement of Henkel's Trademark Rights by providing sales platforms, channels of distribution, promotion, and/or marketing for goods manufactured by third party vendors that infringe upon Henkel's Trademark Rights.

98.    BeautyandWoman's wrongful conduct has caused and/or is likely to cause confusion among consumers.

99.    BeautyandWoman further submitted the '524 Application in an attempt to procure a federal registration for the mark "ROYCO PROFESSIONAL," disclaiming the word

"professional."

100.    BeautyandWoman has engaged in and continues to engage in unfair practices by infringing Henkel's Trademark Rights with the intention of interfering with and trading on the business reputation and goodwill engendered by Henkel through hard work and diligent effort.

101.    Upon information and belief, BeautyandWoman's wrongful conduct has primarily and substantially occurred within the Commonwealth of Massachusetts as evidenced by, among other things, BeautyandWoman's maintenance of a principal place of business in Everett, Massachusetts and identification of Boston, Massachusetts as its location on its social media accounts.

102.    BeautyandWoman's acts have caused Henkel competitive injury, and specifically have caused Henkel to incur substantial damages in an amount to be proved at trial consisting, of among other things, loss of goodwill and profits to BeautyandWoman's, damage to the reputation of Henkel and its products, unlawful diversion of sales and unjust enrichment of BeautyandWoman at the expense of Henkel, and injury to consumers cause by confusion, mistake, and deception in the market.

103.    BeautyandWoman's activities are calculated to deceive the public and thus constitute unfair and deceptive business practice, in violation of Massachusetts General Laws, Chapter 93A, §§ 2, 11.

104.    As a direct and proximate result of BeautyandWoman's unlawful, unfair and deceptive business practices, BeautyandWoman collected revenues and/or realized profits to which they were not entitled.

105.    Henkel seeks restitution and disgorgement of the revenues collected and/or profits realized by BeautyandWoman as a result of their unlawful, unfair and deceptive business practices.

106.    Henkel further seeks an order of this Court enjoining BeautyandWoman from continuing its wrongful business practices.  Unless restrained by this Court, BeautyandWoman will continue to engage in unfair, false and misleading business practices, as alleged above.  Henkel and the public will be irreparably harmed if an order of the Court enjoining such practices is not granted.  Henkel is therefore entitled to preliminary and permanent injunctions.

107.    Henkel has no adequate remedy at law for the injury alleged in this cause of action, and the injury is, in part, intangible in nature and not capable of being fully measured or valued entirely in terms of monetary damages.

108.    In addition to injunctive relief, disgorgement, and restitution, Henkel is also entitled to all other remedies provided under Massachusetts General Laws, Chapter 93A, §§ 2, 11 and/or unfair competition common law.

## TENTH CAUSE OF ACTION

### Common Law Unfair Trade Practices

1-108.  Henkel repeats and realleges paragraphs 1 through 107 of the Complaint as if fully set forth herein.

109.    BeautyandWoman has used, continues to use, and upon information and belief, plans to continue to use the word "Royco" and/or the phrase "Intensy Color" in connection with its promotion, advertising, distribution, sale, offering for sale, and/or other use in commerce of hair products, a usage that is nearly identical and/or confusingly similar to Henkel's use of JOICO® and/or COLOR INTENSITY®, respectively.

110.    Alternatively, despite having full knowledge of Henkel's Trademark Rights, BeautyandWoman intentionally contributes and/or induces a third party to commit infringement of Henkel's Trademark Rights by providing sales platforms, channels of distribution, promotion,

and/or marketing for goods manufactured by third party vendors that infringe upon Henkel's Trademark Rights.

111.   BeautyandWoman's wrongful conduct has caused and/or is likely to cause confusion among consumers.

112.   BeautyandWoman further submitted the '524 Application in an attempt to procure a federal registration for the mark "ROYCO PROFESSIONAL," disclaiming the word "professional."

113.   BeautyandWoman has engaged in and continues to engage in unfair practices by infringing Henkel's Trademark Rights with the intention of interfering with and trading on the business reputation and goodwill engendered by Henkel through hard work and diligent effort.

114.   BeautyandWoman's acts have caused Henkel competitive injury, and specifically have caused Henkel to incur substantial damages in an amount to be proved at trial consisting, of among other things, loss of goodwill and profits to BeautyandWoman, damage to the reputation of Henkel and its products, unlawful diversion of sales and unjust enrichment of BeautyandWoman at the expense of Henkel, and injury to consumers cause by confusion, mistake, and deception in the market.

115.   BeautyandWoman's activities are calculated to deceive the public and thus constitute unfair and deceptive business practice, in violation of unfair competition common law.

116.   As a direct and proximate result of BeautyandWoman's unlawful, unfair and deceptive business practices, BeautyandWoman collected revenues and/or realized profits to which they were not entitled.

117.   Henkel seeks restitution and disgorgement of the revenues collected and/or profits realized by BeautyandWoman as a result of their unlawful, unfair and deceptive business practices.

118.    Henkel further seeks an order of this Court enjoining BeautyandWoman from continuing its wrongful business practices.  Unless restrained by this Court, BeautyandWoman will continue to engage in unfair, false and misleading business practices, as alleged above.  Henkel and the public will be irreparably harmed if an order of the Court enjoining such practices is not granted.  Henkel is therefore entitled to preliminary and permanent injunctions.

119.    Henkel has no adequate remedy at law for the injury alleged in this cause of action, and the injury is, in part, intangible in nature and not capable of being fully measured or valued entirely in terms of monetary damages.

120.    In addition to injunctive relief, disgorgement, and restitution, Henkel is also entitled to all other remedies provided under Massachusetts General Laws, Chapter 93A, §§ 2, 11 and/or unfair competition common law.


### PRAYER FOR RELIEF

WHEREFORE, Henkel prays for judgment in its favor against BeautyandWoman as follows:

A.    A judgment that BeautyandWoman has infringed, induced, and/or contributed to the infringement of Henkel's Trademark Rights.

B.    That BeautyandWoman, their officers, members, agents, servants, employees, and attorneys, and all those in active concert or participation with them or any of them who receive actual notice of an order, be preliminarily and permanently enjoined from further infringement of the Henkel's Trademark Rights.

C.    That BeautyandWoman be ordered to account for and pay to Henkel all damages caused to Henkel by reason of its infringement of Henkel's Trademark Rights.

D.    That the damages for which BeautyandWoman is liable to Henkel include, but not

be limited to, lost profits and/or price erosion damages.

E.    That appropriate damages be enhanced pursuant to 15 U.S.C. § 1117 by reason of BeautyandWoman's deliberate and willful infringement of Henkel's Trademark Rights.

F.    That this case be declared an exceptional case pursuant to Massachusetts General Law, c. 93A, § 11 in view of the deliberate and willful nature of the infringement and unfair trade practices by BeautyandWoman and that Henkel be awarded its reasonable attorneys' fees.

G.    That this Court declare, adjudge, and decree BeautyandWoman's false designations and other unlawful acts alleged herein to be a violation of §35 U.S.C. § 1125, common law trademark infringement, trademark dilution, unfair competition under state and/or common law.

H.    That this Court temporarily, preliminarily, and permanently enjoin and restrain BeautyandWoman, its members, officers, directors, servants, employees, attorneys, agents, representatives, and distributors, and all other persons acting in concert or participation with BeautyandWoman from:

(1)    Using "Royco," "Intensy Color," or any other marks confusingly similar to Henkel's Trademark Rights in promoting, packaging, marketing, advertising, selling, or offering to sell hair products.

(2)    Using "Royco," "Intensy Color," or any other marks confusingly similar to Henkel's Trademark Rights for any websites, domain names, social media pages, or e-commerce product listings owned or operated by BeautyandWoman.

(3)    Using "Royco," and "Intensy Color," or any other words or phrases any other marks confusingly similar to Henkel's Trademark Rights in the name of their entities or businesses in the field of hair products or services, including Royco Professional LLC.

I.    That this Court order BeautyandWoman to recall any and all products and related

print materials bearing "Royco," "Intensy Color," or any other marks confusingly similar to Henkel's Trademark Rights.

J.      That this Court order BeautyandWoman to withdraw its trademark applications directed to "Royco," "Intensy Color," or any other marks confusingly similar to Henkel's Trademark Rights, including the '542 Application, and to be enjoined from applying for future federal or state registrations directed to those marks.

K.      That this Court award Henkel compensatory damages as provided by law.

L.      That this Court award Henkel statutory damages as provided by law.

M.      That this Court award Henkel enhanced and/or treble damages as provided by law.

N.      That this Court award Henkl punitive damages as provided by law.

O.      That this Court award Henkel restitution as provided by law.

P.      That this Court order BeautyandWoman to account to Henkel for all profits from its infringement of Henkel's Trademark Rights.

Q.      That this Court award Henkel its costs, disbursements, and attorneys' fees incurred in bringing this action.

R.      That this Court award Henkel prejudgment and post-judgment interest as provided by law.

S.      That this Court award Henkel such other and further relief as this Court may deem just and proper.

**JURY TRIAL DEMAND**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Henkel hereby demands a

trial by jury in this action of all counts and issues triable to a jury in this matter.

Respectfully submitted,

HENKEL CORPORATION

By its attorneys,

By: _____

Andraya Pulaski Brunau (BBO# 688729)
abrunau@daypitney.com
Keith H. Bensten (BBO# 561475)
kbensten@daypitney.com
DAY PITNEY LLP
One Federal Street, 29th Floor
Boston, MA 02110
Tel: (617) 345-4600
Fax: (617) 345-4745

Christopher T. Holland (*motion for admission pro hac vice pending*)
cholland@hollandlawllp.com
Pei Hsien Ren (*motion for admission pro hac vice pending*)
pren@hollandlawllp.com
HOLLAND LAW LLP
220 Montgomery St., Ste. 800
San Francisco, CA 94104
Tel: (415) 200-4980
Dated:  September 12, 2024            Fax: (415) 200-4989